Freeman, J.,
delivered the opinion of the court.
The original bill was filed in this case by the complainants, in February, 1868, as creditors of S. Y. Big- *59 ham, seeking to set aside two deeds conveying certain tracts of land to the defendant Morris, upon the ground that they were made to hinder and delay the creditors of Bigham, and were therefore fraudulent and void.
The defendants answered, denying all fraud, and insisting upon the bona fides of the conveyances.
In addition to this denial, Bigham, in his answer, sets up as a defense to a recovery upon the debts sought to be enforced, his discharge in bankruptcy, granted by the District Court of the United States for the Western District of Tennessee. This discharge is presented in due form in said answer, as having been adjudged and ordered on the 15th of July, 1869, on a petition filed the 29th May, 1868. The discharge is in the form prescribed by the Bankrupt Act- of 1867, and is set out as a part of the answer. We here copy it, for the purpose of showing what it purports to adjudge and decree on its face, and for convenient reference in this opinion. It is as follows:
“District Court of the United States for the
Western District of Tennessee.
Whereas, Samuel Y. Bigham has been adjudged a bankrupt, under the act of Congress establishing a uniform system of Bankruptcy throughout the United States, and appears to have conformed to all the requirements of law in that behalf; it is therefore ordered by the court that the said Samuel Y. Bigham be discharged from all debts and claims which by the said act were made provable against his estate, and which existed on the 29th day of May, 1869, on which day the petition for adjudication was filed by him, except *60 ing such debts, if any, which are by said act excepted from the operation of a discharge in bankruptcy.”'
This is the form of the decree and discharge as prescribed in the statute.
This answer was filed the 8th of June, 1871, and on the 12th of December, 1871, the complainants caused a paper to be served on said Bigham, in the form of a notice, and called on its face “a notice,” and “Exhibit No. 27,” which paper they file in the cause, as appears by the endorsement of the clerk and master. This paper, a very peculiar one as part of the proceedings in a chancery court of this State, shows on it face its object, by notifying said Bigham that, upon the hearing of this case, of Hudson and others against him and others, in the chancery court at Huntingdon, the complainants will insist that the discharge in bankruptcy is invalid, for the various reasons therein specified.
The specifications set out are four in number, and it needs only be stated that they charge a fraudulent withholding of the true statement of the property and assets of said Bigham from the schedule required to be filed by him with his petition in bankruptcy, and also charge other acts specified in the act of Congress, which might have been urged as a reason for withholding the discharge in the district court, or for annulling the discharge within two years after its date, upon proper proceedings, as required by the Bankrupt Act of 1867.
Before proceeding to discuss the main question, debated so earnestly before us, it is proper to say that we know of no rule of law, or of pleading or prac *61 tice, in Our State, by which a material fact involved in the decision of a case in the chancery court can be put in issue upon a notice given to a party that such fact will be contested at the hearing of the case. The defendant had presented his defense to the decree sought against him, in his answer, and had tendered therewith the evidence of such defense, complete in form and prima faoie conclusive in his favor. This was presented in the form of the record of a decree made by a court of competent, and indeed of exclusive, jurisdiction to adjudge the matters purporting to have been adjudged by that decree. We need but say, that the notice referred to can cut no figure in this case, as it is not a pleading, and no issue has been, or could have been, made upon its allegations.
The case then presents the simple question, whether, when a defendant presents, by way of defense to a demand sought to be enforced against him in a State court, the plea of a formal discharge in bankruptcy under the act of Congress of 1867, the complainant in the State court can defeat the conclusive effect of the adjudication in the bankrupt proceeding, by proof of a violation by the bankrupt of the requirements of the a(et, in withholding a full statement of his property in his schedule, required by the act to be furnished with his petition; or for any of the causes mentioned in said act.
It will be seen from this statement of the question, that we must look to all the proof, and not to the allegations of any pleading, to see what is the ground of attack on the validity of this judgment, — not a very *62 satisfactory mode of investigating the question, to say the least of it.
Waiving these matters, however, we proceed to consider the question pressed upon our attention by counsel.
We would say, that a majority of the court have, in at least two cases, one at Knoxville and the other at Nashville, within the last twelve months, adjudged the question here presented, laying down the rule, that the discharge of a bankrupt cannot be attacked collaterally in a State court, for the causes referred to. But' inasmuch as it is earnestly pressed upon us, we review the question, premising however that, after two adjudications in which it was seriously investigated, we ought, before consenting to overrule those decisions, to be very clearly convinced that they were erroneous, and detrimental to sound policy.
In order properly to understand the question involved, let us distinctly ascertain the nature and character of the proceeding in bankruptcy, and what matters are involved in such a suit; also, what is the character of the jurisdiction exercised in such a proceeding by the district court of the United States.
It is obvious that the proceeding is one of a peculiar character, having elements not found in the ordinary proceedings of our courts. Its character may be best seen by considering the general purpose of the law, in connection with its precise provisions. The great object of all bankrupt or insolvent laws, says Mr. Bump in his work on Bankruptcy, is to distribute the property of 'the debtor who is unable to pay his debts in full, among his creditors (and we may add, *63 among all his creditors) by judicial proceedings in which all may be heard, and to discharge his property afterward acquired, or at least his person, from the debts owed by him at the time of the institution of such proceedings. The Bankrupt Act of 1867 evidently contemplates this. The discharge provided for by section 23, is the embodiment of the judgment or decree of the court charged with the administration of the act, that the party be forever discharged from all debts and claims which by said act are made provable against his estate, and which existed on the day the petition for adjudication was filed, “excepting only such debts as are excepted by said act from the operation of a discharge in bankruptcy.” In other words, taking the Bankrupt Act of 1867 in its full scope, the proceeding under it is a suit by the party petitioning (where it is a case of voluntary bankruptcy), against all his creditors, with certain exceptions named in the act, in which the petitioner seeks, by the judgment of the district court of the United States, to be forever discharged from all debts provable against his estate, under the provisions of the act, and which exist at the time of filing his petition. This is the plain and well defined object of the proceeding, and all the regulations prescribed in the statute for the conduct of the suit thus commenced, are intended to effectuate this end, and at the same time to give the creditors, who are to be defendants to this suit, ample means of proving their claims, and sharing in the final disposition of the estate of the bankrupt pro rata, according to the amount of their debts.
*64 In order to carry out the purpose of the law, it is- provided that the petitioner shall annex to his petition a schedule, on oath, containing a full and true statement of all his debts, and as far as possible to whom due, with the place of residence of each creditor, if known to the debtor, and the sum due from him; in a Avord, a full list of the parties against whom the suit is brought, as far as practicable. Sec. 11, act of 1867.
It will be seen, however, from this, and other provisions, that absolute accuracy in this matter is not required; for it is to be done as far as practicable.
Notice of the filing of this application or petition is to be published in such newspaper as may be designated, and the Marshal is, under an order required to be made, “to serve written or printed notice, by mail or personally, on all creditors upon the schedule filed with the petition, or whose names may be given to him in addition by the debtor, which notice shall specify, among other things, the issuance of the warrant in. bankruptcy against the estate of the bankrupt, and that ■ a meeting of the creditors, giving names, residences, and amounts, so far as known, to prove their debts, and choose an assignee of the estate, will be held at a time fixed in the notice.”
These provisions shoAV the character of the proceeding to be such as we have indicated, and that all the creditors, so far as known, are to be made parties by actual notice. And we think the publication in the newspaper was clearly intended to apply to those not known, or whose residences were not known.
*65 This being the character of the proceeding, the judgment of discharge, by its terms, is an adjudication of the questions involved in the suit, and is, between the petitioner and the defendants, his creditors, a decree binding and conclusive on all who are made parties in accordance with the provisions of the act ; or, in the language of the discharge, is an adjudication that “he is discharged from all debts and claims which by said act are made provable against his estate, which existed at the commencement of the suit.”
In this view of the question, upon a principle of universal recognition, the judgment of the bankrupt court, one of competent jurisdiction, is conclusive of all matters adjudged, as between the parties to that suit, and cannot be collaterally attacked, or questioned, before any other tribunal. We need cite no authority for this proposition. It is axiomatic. This being so, it follows, that unless the complainants can show that they are excepted from the operation of this rule by some well settled principle of law, the decree in bankruptcy is, and must be, conclusive as to their debt, it having been in existence at the commencement of the bankrupt suit, and being a debt provable under -said proceedings.
This view would seem conclusive of the question, on principle; but the case is still stronger. Under the Bankrupt Act of 1841, which., in its general features, was similar to that of 1867, the Supreme Court of the United States, in the case of Shawan v. Wherritt, 7 How., 627, make use of the following language:—
“The public notice required by the act having been *66 given, the creditors must be treated as having notice of the proceedings, and an opportunity to make their objections to them; and having neglected or refused so to do, they ought not to be allowed to impeach them collaterally, as they are in the nature of a proceeding in rem before a court of record having jurisdiction.”
This being so, it is well settled that in a proceeding in rem, or of that nature, the decree is conclusive against all parties having the right under the proceeding to contest the decree. This is a universal principle, with no exception, so far as we have been able to see.
If this be the correct view of the matter, and being that of the Supreme Court of the United States it is conclusive upon us, then the question before us does not admit of doubt, and the decree in bankruptcy is conclusive as against a collateral attack on it.
We are aware that several State courts, (among them our own), held, under the act of 1841, in construing the clause as to the effect of the discharge, — this making it subject to attack in our courts, — that it might be avoided by showing fraudulent concealment of property. We doubt very much the correctness of that view, even under that act. It was never so held by the Supreme Court of the United States, and the principle laid down in the, case just cited, would indicate that no such doctrine would have been maintained by that court had the question been brought before it.
However, the language of the clause as to the effect of the discharge, in the act of 1841, and that of the corresponding clause in the act of 1867, are entirely *67 different, and do not admit of the same construction, as we shall show in a subsequent part of this opinion. In addition to the above, however, the conclusive effect, on general principles, of such a decree, is strengthened by considerations drawn from the nature of the jurisdiction exercised by the Federal courts, and the ex- ^ elusive control which the Federal Government has over this peculiar question of bankruptcy.
Sec. 8, of Article 1, of the Constitution of the United States, in defining the legislative power of the Federal Government, declares, among other things:— “The Congress shall have power * * * to establish an uniform rule of naturalization, and uniform laws on the subject of- bankruptcies throughout the United States.”
Since the leading case of Sturgis v. Crowninshield, 4 Wh., 122, decided in 1819, and the opinion of Marshal], Ch. Justice, delivered in that case, it has been settled, with almost perfect unanimity, that the power is so far exclusive in the Federal Government that, when exercised by the passage of a law regulating bankruptcies, it is incompatible with the exercise of a smilar power by the States. In pursuance of this view, it is settled beyond dispute, by an overwhelming weight of adjudications, both State and Federal, that the moment a bankrupt law of the United States goes into operation, all State insolvent laws become inoperative and are suspended. See the case of Reynolds, Supreme Court of Rhode Island, reported in 5th American Reports, 615 (8 R. I., 485), where the cases on this question are cited.
This being so, it is clear that the jurisdiction of *68 the district court of the United States oyer the whole question of bankruptcy is exclusive, being the exercise of a power granted to the Federal Government alone, and the administration of a remedy given, or a suit brought, in pursuance of, and under, a statute of the United States, which no State court can be called on to administer, and over which no State court has any control. The power conferred by the Constitution upon Congress over the subject of bankruptcy, has been exercised by that body in the passage of the act of 1867; and the machinery for carrying out its purpose has been confided exclusively by .Congress to the courts of its own government, as was proper. In this view of the case, to hold that the decree of a court having this exclusive jurisdiction, can be set aside, in a collateral attack, by proof of matter which, if shown in the suit in the bankrupt court, would have prevented the decree from being rendered, would be in violation of all principle. To the State court, this decree of the Federal court stands as the decree of a tribunal having complete and exclusive jurisdiction over the whole question, to settle and adjudge all matters involved in the proceeding; and unless void on its face, it can 'never be attacked or disregarded. In such cases the regularity of the proceedings is presumed. The jurisdiction confers the power to render the judgment; and no irregularity in the form of proceeding will affect its validity. And it is binding until set aside in the court in which it is rendered. Dobson v. Pearce, 12 N. Y., 156; Kinnier v. Kinnier, 45 N. Y., 535, and cases cited.
*69 This being so, and in view of the other principles we have laid down, it is beyond question that the decree of the district court, in the present case, is conclusive on general principles, unless the power is .given to a State court by the act itself to declare it inconclusive and void, or unless by the law of Congress it is not made conclusive in its effect, as in the case of other decrees and judgments of courts of general jurisdiction.
"We proceed now to examine the law of Congress itself, to see what is the effect of this discharge in bankruptcy by its provisions.
It must be remembered, that the law of Congress is directed to the action of the Federal court, contemplates proceedings in them, and prescribes the mode of their action exclusively.
That Congress has the power to declare the 'effect of the discharge which shall be granted by the decree of its courts, is not questioned by any one. This exists by virtue of its exclusive control over the whole •question. We turn to the language of the law, to see what that effect is.
By section 34 of the act (Revised Statutes, see. 5119), it is provided, that a discharge duly granted under this act shall, with the exceptions aforesaid, release the bankrupt from all debts, claims, liabilities and demands which were, or ought to have been, proved against his estate in bankruptcy, and may be pleaded by a simple averment, that on the day of its date, such discharge was granted to him, setting forth the same in hceo verba, as a full and complete bar to all suits *70 brought on any such debts, claims, liabilities or demands, and the certificate shall be conclusive evidence in favor of such bankrupt of the fact and the regularity of such discharge; that is, that the decree has been rendered, and that the proceedings Avere regularly conducted.
This portion of the section admits of but one construction, and makes • the discharge, according to general provisions of law, conclusive as in the case of other judgments and decrees of courts of competent jurisdiction. It applies to the effect of this discharge in any and all courts where the party may be sued or impleaded to recover and enforce such debts; for-it provides how it shall be pleaded in defense to such suits, and its effect in such cases.
This feature of this clause, we think, has been overlooked generally in the discussions we have seen as to the effect of the discharge; that is, the fact that this clause applies specifically to the effect that shall be given to the discharge by any and all courts in which suits should be brought to enforce any debts which were, or might have been, proved against the estate of the bankrupt in the bankrupt suit. It makes the discharge conclusive as a plea in all such cases, if language can do so; and to this effect in such suits, there is no exceptional provision in the statute.
Then follows, however, the proviso for the benefit of such creditors, in this language: — “Always provided, that any creditor or creditors of said bankrupt, etc... who shall see fit to contest the validity of said discharge, on the ground that it was fraudulently ob *71 tained, may at any time witbin two years after the date thereof, apply to the court which granted it, to set it aside, and annul the same.”
It then goes on to regulate the mode of procedure in such cases, and what judgment shall be rendered by the court. It further provides, that if the fraudulent acts alleged are not proved, or the court shall, see that they were known to the creditor before-the discharge granted, then judgment shall be rendered in favor of the bankrupt, and the validity of his discharge shall not be affected.
Here is a mode of attacking the validity of a discharge and having it annulled, provided by the act itself; by which the previous conclusive effect of the discharge given by the first part of the section is, or may be, avoided.
\Ye are here, however, called on to say that, notwithstanding this conclusive effect, the discharge may, nevertheless, be shown by proof to have been fraudulently obtained- in all cases, when interposed by plea in accordance with the statute.
The conclusion that this was not intended to be done, is strengthened by the fact that the Congress of the United States has passed several similar laws before this, which had been administered and construed by the courts of the country. The last act previously passed, in 1841, had a provision that was in accord with the views maintained by counsel in this case. It was as follows:—
“Such discharge, when duly granted, shall, in all courts of justice, be deemed a full and complete dis *72 charge of all debts, etc., which are provable under this act, and shall and may be pleaded as a full and complete bar to all suits brought in any court or judicature whatever, and the same shall be conclusive evidence of itself in favor of such bankrupt, unless the same shall be impeached for some fraud, or willful concealment by him of his property, etc., contrary to the provisions of this act.”
The proviso here is for impeaching the discharge in all courts, or was so construed; but the act of 1867 provides for annulling it by the proceeding therein given. The provision of the act of 1841 is entirely different in its terms and purpose from that of the act of 1867; and unless we hold that the latter act, by the ase of different language, definitely and clearly expressing a contrary purpose, intended to provide for the same thing as the act of 1841, we must conclude that no such effect was intended as is insisted upon in this case.
The debates in Congress show, we believe, that the purpose was as we have construed' it, — to establish a different rule from that of 1841.
Several other sections of the Bankrupt Act are referred to, however, as sustaining the view contended for, some of which we notice.
First, the 21st section is instanced, which, in the first clause, only provides that no creditor proving his debt or claim shall be allowed to maintain any suit at law or in equity therefor against the bankrupt, but shall be deemed to have waived all right of action, etc.
Without critically examining this clause, we need *73 but say that, taken in connection with the balance of the section, it has no application whatever to the effect of a discharge, but only to the right to prosecute or bring suit against the bankrupt during the pendency of the bankrupt proceedings, as is shown by subsequent parts of the section, providing for such suits being continued, by leave of the bankrupt court, to the point of a judgment, and then the debt being proven against the bankrupt’s estate.
The construction contended for by the counsel would involve the impossible conclusion, that the whole effect of the bankrupt proceedings might be avoided at the option of any and every creditor, by a simple refusal to prove his debt. If this be the construction of the law, then its provisions become entirely nugatory; for no creditor, under such circumstances, would ever come in. Creditors might prefer to wait and take their chances by diligence to secure their own debts in their own way, and decline merely to share in a pro rata distribution of the bankrupt’s estate. Such would be the result of the proposition of counsel in this case, which is “ that a creditor who has ■ not proven his debt may bring his suit in any court of law or equity, notwithstanding the discharge granted.
The section applies only to the bringing or prosecuting suits pending the proceeding. Any one may bring suit after the discharge, and the law does not interfere to prevent it; and he may even have a judgment, if the bankrupt chooses to waive the benefit of his discharge, and not interpose it for his protection.
But if he pleads it, then. the law says it shall be *74 a complete bar to all suits brought ou such debts as were proven, or might have been proven, against the bankrupt’s estate.
We may dispose of these arguments by reference to the general provisions of sec. 29 (Revised Statutes, secs. 5108, 5109), which furnish the- strongest support to the views maintained.
This section is the one which provides for granting the discharge, and fixes the time when it shall be granted, the notice to be given to creditors, and the terms on which the court shall grant it. It provides only for the action of the district court, in the proceeding in bankruptcy, and has no reference to suits brought after the discharge, or suits to enforce claims which were proven, or might have been proven, against the estate, as sec. 34 does. It says to the bankrupt court: — No discharge shall be granted, or, if granted, shall be valid, in certain eases, or upon certain facts being shown to said court; — and, in the conclusion of the section, it requires the bankrupt to take an oath that he has not done, or been privy to, any act, matter, or thing, specified in this act as a ground for withholding the discharge, or invalidating it if granted.
The next section, 30, provides that no person shall be granted a discharge who had previously been discharged under this act, except under certain conditions.
The 31st section then provides for any creditor opposing the discharge filing specifications, in writing, of the grounds of his opposition, and for the court’s ordering any question of fact so presented, to be tried at any session of the court.
*75 The 32d section then enacts, that if it shall appear to the court that the bankrupt has in all things conformed to his duty under the act, and that he is entitled to receive his discharge from all his debts, with the exceptions specified, the court shall grant him the certificate which is provided for, and which we have quoted.
It is obvious, from this summary of the sections and their provisions, that they are all intended to be brought into operation, and that they bear on the question of granting the discharge by the court, and provide for proceedings to be had before the same is granted.
After the form of the discharge, follows section 33, exempting certain debts from the effect of the discharge so granted; and then the section which we have before quoted and commented on, as to the conclusive effect of the discharge in cases where suits are brought on debts proven or provable; and a proviso giving the only means of defeating or avoiding this conclusive bar thus provided by the statute against such suits.
This proviso contains the only provision of' the law of Congress by which this conclusive effect is to be prevented as to such debts, and that is by having the decree granting it annulled and set aside upon proceedings .regularly instituted for the purpose, within two years from the time of granting it.
It will be further seen, from the language of the section immediately preceding the discharge, that the court is required then to adjudicate the question as to whether the bankrupt has, in all things, conformed to his duty *76 under this act, and is entitled, in view of this investigation, to his discharge.
In addition, the discharge itself recites the fact ■ on its face that the party has been duly adjudged a bankrupt, and appears to have conformed to all the requirements of law in that behalf, and that therefore it is' ordered by the court that he be forever discharged from all debts, etc.
So that it appears clearly that the act contemplates all these facts to have been investigated and adjudged preliminarily to the discharge.
This would,. on general principles, have been conclusive on all creditors having proven, or who had provable debts; and therefore the subsequent section defines the effect of this discharge, and provides that it may be defeated by proceedings instituted for the purpose within two years. This is, it seems to us, the plain, obvious construction of the statute, when elosely examined, and harmonizes it with the nature of the proceeding and the general object and purpose of all such laws, and especially with the whole purview of the act of 1867. Such has been the almost uniform holding of all the courts before which this •question has come. They have uniformly, with the exception, so far as we have seen, of Connecticut only, held that the authority to declare a discharge void in a State court is incompatible with the jurisdiction on this subject conferred on the Federal district courts, and we think, for the soundest reasons. See Corey v. Ripley, 57 Maine, 69 (2 Am. Rep.); Oates, Adm’r, v. Parish, Supr. Court of Alabama Newsp. R.
*77 Mr. Bump, in his work on Bankruptcy, p. 243, says that this is the sounder view of the question, and we may add that his treatise is the best on the subject that we have seen. He says that the power conferred on the court of bankruptcy to annul a discharge is exclusive, and that the discharge, like any other judgment, can not be impeached when brought in question in a collateral action by any creditor who has been properly notified of the pendency of the bankrupt proceedings. The statute, it is true, declares, in section 29, that the discharge, if granted, shall not be valid if the bankrupt has committed any of the acts which would constitute valid grounds for withholding it; but this evidently contemplates the means subsequently provided for annulling it. If this were not so, he adds, it would be idle to summon creditors into a special court to set up objections which could be alleged and tried equally as well in any court. There must, moreover, be an end of litigation, a time beyond which certain facts can not be contested. The necessity of meeting and contesting them in every court in which the discharge may be pleaded, is a hardship Congress never intended to impose upon the bankrupt, and is, moreover, so flagrantly unjust, and so contrary to all the ordinary principles of jurisprudence, that nothing but the imperative demand of the statute could justify or warrant such a construction.
This view of the question certainly carries with it great force of reason. In addition, we may add other reasons which, we think, strengthen this conclusion. *78 It seems to us that such a power woul'd be inconsistent with the exclusive jurisdiction over the whole subject belonging to the Federal Government, and would render such a discharge, in many cases, a burden and a snare, rather than a relief, to a debtor. He goes into a court of exclusive jurisdiction and prosecutes his suit with effect to a decree discharging him from his debt; but this only proves a delusion on the construction contended for, by exposing him to have the whole question of its validity retried at the suit of every discontented creditor who may choose to harass a despised bankrupt; and thus, after a solemn decree of the bankrupt court, if he has a thousand creditors, each one of them may attack the validity of the decree. And this may be many years afterward, when his witnesses are dead; or he may himself be dead, and his personal representative may know nothing of the facts, and the discharge may be overturned on the ground that some article of property the bankrupt was supposed to own was not delivered up in his schedule, or some one of the requirements of the law not complied with; and this in the face of the decree of the court adjudging that be had conformed to his duty in all the requirements of the law at the time.
Again, he may have had the very grounds urged against his discharge by one creditor under the provisions of the law, and the matter may have been decided in his favor;. or it may have been attempted by another creditor to annul his discharge within the two years, and the court may have decided in that *79 issue again in his favor; yet, in the view now advanced, another creditor, who had not chosen to prove his claim, might still require him to try the same question over again.
Further than this, his discharge may have been, under this view of the law, contested and declared void by a State court within the two years, and yet, on proceedings instituted under the statute by other creditors, in the district court of the United States, having full jurisdiction over the whole question, it may have been adjudged valid, and not subject to be annulled for the causes stated. Which judgment is to be held correct? and which shall relieve him from his embarrassment? Ho one can tell. In a word, this view of the law enables the State courts, having no jurisdiction over the original question, practically to nullify, if they choose, the decree of the courts of the United States, having exclusive jurisdiction over the whole subject; and,, as we have said, it is incompatible with the powers granted to the Federal Gov■ernment, because it enables the courts of nearly forty States to nullify and render those powers inoperative. ISTo such construction ought to be given to the act of Congress, unless its terms imperatively demand it; and we think we have shown that they neither demand it, nor even admit of it, when fairly • considered and construed.
This view of the question is in accordance with well settled principles, applied in all other cases of construction of statutes. The whole bankrupt proceeding is one under a statute of the United States. *80 The powers exercised, and the remedies provided, in the language of the Supreme Court of Maine, in Corey v. Ripley, are given by the statute. The impeaching-tribunal is specified by the statute, and its mode of proceeding pointed out; and this designation, on well settled principles of interpretation, forms a part of the remedy, and excludes all others. For which the court cite numerous cases, which might be added to indefinitely, if deemed necessary. The case of Dudley v. Mayhew, 3 N. Y., 11, is a case precisely in point, in which authorities will be found collected, and the reasoning given, which settle the principle laid down, beyond all dispute.
We therefore hold that the discharge granted by the district court having jurisdiction over the person and estate of the bankrupt, is conclusive as a bar to all suits commenced in the State courts, when interposed by plea as provided in the statute, so far as any attack can be, or shall be attempted to be, made by alleging fraud in obtaining it, by withholding assets, or for other causes specified • in the statute. For these the statute has provided the remedy, by authorizing the discharge to be annulled by the proceedings therein pointed out.
We have twice before had occcasion to examine this question, and have again given it a careful review because' of its importance and the urgency of counsel. We feel no doubt whatever as to the soundness of the conclusion to which we have arrived. The result is, that the Chancellor’s decree on this subject is correct, and must be affirmed, with the costs of *81 this court, and the costs below as imposed by the .Chancellor.